**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANI PARSADANYAN,<br>Petitioner,<br>v.<br>TODD LYONS, *et al.*,<br>Respondents. | Case No. 5:26-cv-03246-DMK<br><br>**MEMORANDUM AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

On June 11, 2026, Petitioner Ani Parsadanyan, an immigration detainee, filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241 (the "Petition"), challenging the legality of her detention by Respondents at the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California ("Adelanto") and seeking immediate release. *See* ECF 1.

**I**

Petitioner is a native and citizen of Armenia. *Id.* at ¶ 28. On August 28, 2024, she presented herself to immigration officers at the Otay Mesa, California port of entry and applied for admission without a valid entry document. *Id.* at ¶ 29; ECF 7 at 2. United States Customs and Border Protection served her with a notice and order

of expedited removal and took her into custody. ECF 7-1 at 4. On September 27, 2024, the United States Department of Homeland Security ("DHS") issued Petitioner a notice to appear, designating her as an "arriving alien," charging her as inadmissible under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)), and placing her in removal proceedings. ECF 1 at 19. On November 2, 2024, DHS paroled Petitioner into the United States and released her from custody for the duration of her removal proceedings.[1] ECF 7 at 2; ECF 7-1 at 4.

Over the next eighteen months, Petitioner built a life in the United States. She complied with every immigration reporting requirement and attended every scheduled immigration appointment. ECF 1 at ¶¶ 6, 33–34. In August 2025, she applied to United States Citizenship and Immigration Services ("USCIS") for permission to work in the United States. ECF 7-1 at 4. USCIS approved her application that October, authorizing her to work in the United States through October 2030. *Id.*

On May 18, 2026, the Burbank Police Department arrested Petitioner for reckless driving and engaging in an illegal speed contest.[2] ECF 7-1 at 4; *see* Cal. Veh. Code §§ 23103(a), 23109(a). The arrest triggered an alert to ICE, which in turn lodged an immigration detainer with the Burbank Police Department. ECF 7-1 at 4. The police department declined to honor the detainer, so the next morning, ICE officers drove to the Burbank police station, waited outside for Petitioner to be released, and then arrested her as she walked out. *Id.* at 3–4. ICE officers served Petitioner with a Form I-200 administrative arrest warrant and then transported her to Adelanto. *Id.* at 4. The record does not disclose whether Burbank prosecutors ever

[1] The notice to appear reflects that supervisory asylum officer vacated the order of expedited removal under 8 C.F.R. § 208.30, which governs credible-fear screening. ECF 1 at 19. Beyond that, the record does not disclose the basis for or conditions of Petitioner's parole, and neither party relies on those undisclosed details.

[2] A violation of California Vehicle Code § 23103(a) is a misdemeanor unless certain aggravating circumstances accompany the violation. *See* Cal. Veh. Code § 23103(c). Respondents nonetheless characterize Petitioner's arrest for that offense as a felony arrest. ECF 7 at 2. They offer no explanation for the reclassification, and they point to nothing in the record that clearly supports it.

filed charges against Petitioner, or whether any criminal case against Petitioner remains pending.

Petitioner has been detained at Adelanto since May 19, 2026. ECF 1 at ¶ 36. Over the course of her four months of detention, Petitioner has received no bond hearing and no individualized custody determination. *Id.* at ¶¶ 37–38. DHS intends to keep Petitioner in custody "pending removal proceedings." ECF 7-1. To date, no final order of removal has been issued. ECF 1 at ¶¶ 31–32; *see* ECF 7 at 5 ("Petitioner's removal proceedings remain pending.").

Petitioner filed the Petition on June 11, 2026. *See* ECF 1. She advances a single claim for relief, contending that her re-detention without prior notice and a pre-deprivation hearing violated her right to procedural due process under the Fifth Amendment's Due Process Clause. *See id.* at ¶¶ 39–46. To remedy that violation, Petitioner asks the Court to issue an order directing her immediate release, enjoining Respondents from re-detaining her without constitutionally adequate pre-deprivation process, and barring her transfer outside the Central District of California during the pendency of this case. ECF 1 at Prayer for Relief ¶¶ C–E. Respondents answered the Petition on June 22, 2026, attaching the Form I-213 as their only exhibit. *See* ECFs 7; 7-1. Petitioner replied on June 25, 2026. *See* ECF 8. The Petition is ripe for decision.

**II**

The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). The "essence" of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a petition and issue a writ of habeas corpus to a petitioner who shows that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

The protections afforded by the writ of habeas corpus have traditionally been at their zenith when "reviewing the legality of Executive detention." *Immigr. & Nat. Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded in part by statute*, 8 U.S.C. § 1252(a)(5). A noncitizen held by immigration authorities may petition for a writ of habeas corpus under 28 U.S.C. § 2241 on the ground that her detention violates the Constitution or other federal laws. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (federal courts have jurisdiction to consider habeas relief under § 2241 for noncitizens subject to detention following order of removal).

**III**

Here, Petitioner alleges that ICE officers re-detained her without prior notice or a pre-deprivation hearing, and thus violated her Fifth Amendment procedural due process rights. *See* ECF 1 at ¶¶ 39–46. She seeks immediate release from immigration custody and an order enjoining Respondents from re-detaining her absent constitutionally adequate pre-deprivation process. *Id.* at Prayer for Relief ¶¶ C–E. Respondents do not engage Petitioner's due process claim. *See generally* ECF 7. They argue instead that (1) the Petition is a "collateral attack" on Petitioner's immigration proceedings, (2) Petitioner's "remedy is through the administrative process rather than habeas proceedings," and (3) Petitioner is an "arriving alien" who is lawfully and properly detained under 8 U.S.C. § 1225(b). *Id.* at 4–5. Because Respondents' first two arguments present threshold questions about jurisdiction and administrative exhaustion, the Court addresses those arguments before turning to the merits of the Petition.

**A**

First, Respondents tacitly contest the Court's jurisdiction to entertain the Petition by characterizing it as a "collateral attack" on Petitioner's pending immigration proceedings. *Id.* at 5.

Several provisions of the INA limit judicial review of immigration matters, including 8 U.S.C. § 1252(a), (b)(9), and (g). Section 1252(g) strips jurisdiction over

claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (quoting 8 U.S.C. § 1252(g)). But that language does not "sweep in any claim that can technically be said to 'arise from' the three listed actions"; it reaches "just those three specific actions themselves." *Id.* (citation omitted). Courts have read § 1252(b)(9), which works with § 1252(a) to channel certain matters to the courts of appeals, just as narrowly. *E.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810–11 (9th Cir. 2020).

Here, Petitioner challenges the legality of her detention by Respondents—not any of the three actions listed above. She disclaims any challenge to her removability, or to the government's decision to initiate removal proceedings, or any immigration court decision. ECF 1 at ¶¶ 16–17 ("Petitioner challenges only the legality of her detention" and "Does not seek review of any final order of removal."); ECF 8 at 6 ("Petitioner does not challenge her Notice to Appear," "the allegations of removability," "any immigration court determination," or any "pending removal proceedings."). The relief she seeks would leave her removal proceedings exactly where they are. Therefore, neither § 1252(a)(5), (b)(5), nor (g) jurisdictionally bars the Court from entertaining her Petition.

**B**

Respondents next contend that Petitioner's "remedy is through the administrative process rather than habeas proceedings." ECF 7 at 5. The Court reads that contention as an exhaustion argument.

Exhaustion in habeas cases is a prudential requirement, not a jurisdictional one. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require administrative exhaustion when agency expertise would aid review, excusing exhaustion would encourage litigations to bypass the administrative scheme, or agency review might moot the dispute. *See id.* (citing *Puga v. Chertoff*, 488 F.3d 812,

815 (9th Cir. 2007)). At the same time, courts "may waive" the requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Assuming exhaustion is required, the Court waives it as futile.

Respondents' arguments illustrate the futility of requiring Petitioner to exhaust administrative remedies. They insist that Petitioner is an arriving alien who, although she was detained in the interior of the United States, is subject to mandatory detention under 8 U.S.C. § 1225(b). ECF 7 at 4. At the same time, they contend that the relief Petitioner seeks in this litigation—release from immigration custody—must be pursued "through the administrative process rather than habeas proceedings." *Id.* at 5. Those positions are irreconcilable. As the Supreme Court has observed, § 1225(b) "mandate[s] detention" and does not allow for release on bond. *Jennings*, 583 U.S. at 297. Similarly, by regulation, an immigration judge may not redetermine the custody of an arriving alien in removal proceedings, including one paroled after arrival. 8 C.F.R. § 1003.19(h)(2)(i)(B). And to clear up any remaining doubts about the likelihood of securing release through administrative avenues, an immigration judge evaluating any request for a bond hearing would likely consider any such request to be subject to the Board of Immigration Appeals' ("BIA") decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025). There, the BIA held that a noncitizen "who is arrested and detained without a warrant while arriving in the United States . . . and subsequently placed in removal proceedings, is detained under [8 U.S.C. § 1225(b)], and is ineligible for any subsequent release on bond under [8 U.S.C. § 1226(a)]," even when the noncitizen was paroled into the United States and released by DHS. *Matter of Q. Li*, 29 I. & N. Dec. at 69; *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1044 (E.D. Cal. 2025).

Under these circumstances, requiring Petitioner to pursue administrative avenues of relief to exhaustion would be futile. *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541–42 (9th Cir. 2004) ("Exhaustion of remedies is not required when resort to such remedies would be futile."). The Court therefore waives any such requirement.

**C**

That brings the Court to the merits of the Petition. Petitioner claims that Respondents violated her to right to procedural due process by re-detaining her without prior notice or a pre-deprivation hearing.[3] ECF 1 at ¶¶ 63, 73–75.

The Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. The Due Process Clause's protections extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003); *Hernandez*, 872 F.3d at 990.

The merits of a due process claims are assessed in two steps: "[T]he first asks whether there exists a liberty . . . interest which has been interfered with by the [government] . . .; the second examines whether the procedures attendant upon that

[3] Respondents' only response to Petitioner's Fifth Amendment claim is statutory: Petitioner is an arriving alien, so 8 U.S.C. § 1225(b) authorizes her detention. ECF 7 at 4. Petitioner does not quarrel with that premise. She argues that whichever statute applies, the Constitution required some process before Respondents re-detained her. ECF 8 at 6. Petitioner is right, so the Court need not decide now whether § 1225(b) or § 1226(a) governs her detention. Statutes tell the executive when it may detain; the Due Process Clause dictates how it must do so. *See Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). In any event, Respondents' briefing on the matter would not permit the Court to resolve the statutory question. Respondents invoke § 1225(b)'s mandatory detention scheme, while simultaneously relying on § 1226(a)'s discretionary detention authority and on the regulations governing revocation of release for noncitizens subject to final orders of removal. ECF 7 at 3–4. Those regimes are alternatives, not companions. And the post-removal-order regulations have no bearing here, where no final order of removal has been entered against Petitioner. *See id.* at 5 ("Petitioner's removal proceedings remain pending.").

deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted); *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

For the reasons set out below, the Court concludes that Petitioner has established that she has a substantial liberty interest that is protected by the Due Process Clause and that Respondents' failure to accord her constitutionally appropriate process before depriving her of that liberty interest violated the Fifth Amendment.

**1**

At the first step, the Court evaluates whether Petitioner has a liberty interest protected by the Due Process Clause.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. That interest does not evaporate simply because the government has initial discretion to detain or release a noncitizen pending removal proceedings. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Petitioner's parole into the United States and release from ICE custody created protected liberty interest in remaining outside of immigration custody. *Id.* ("[A]fter [a noncitizen] is released from custody she has a protected liberty interest in remaining out of custody."). When DHS paroled her in November 2024, it made "at least an implicit promise" that it would not re-detain her unless she failed to live up to the conditions of her release. *Morrissey*, 408 U.S. at 482. And for Petitioner, that governmental decision to release her "gave rise to 'the most elemental of liberty interests—the interest in being free from physical detention by one's own

government." *Martinez v. Noem*, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026) (quoting *Hamdi*, 542 U.S. at 529); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").

Petitioner relied on that promise for over a year and a half. She lived with the ordinary freedoms of anyone else living in the United States, sought and received USCIS's permission to work to work in the United States, reported to ICE as she was required to, and appeared at every scheduled immigration appointment. *See* ECF 1 at ¶¶ 6, 33–34, 44; ECF 7-1 at 4. The government confirmed the arrangement by extending her work authorization through 2030 just mere months before it re-detained her. ECF 7-1 at 4. The time Petitioner spent at liberty thus "creates a powerful interest for Petitioner in [her] continued liberty." *O.T. v. Warden of the Golden State Annex*, 2026 WL 1382872, at *3 (E.D. Cal. May 18, 2026); *see Chavarriaga Rojas v. Albarran*, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) (collecting cases holding that "when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody").

Respondents never claim that Petitioner violated a condition of her release. Nor does the record suggest that DHS ever found a violation or revoked or otherwise terminated Petitioner's parole. Respondents say only that Petitioner "is properly being held in detention during her removal proceedings" under the INA. ECF 7 at 4. As discussed above, that answer addresses power, not process. *Supra* n.3. Petitioner has a substantial liberty interest protected by the Due Process Clause "regardless of any statutory basis for [her] detention." *O.T.*, 2026 WL 1382872, at *3.

**2**

Because Petitioner had a protected liberty interest in her continued freedom from immigration custody, the only question remaining is whether "the government's procedure for [depriving her of that liberty interest] accorded with due process." *Chavarriaga Rojas*, 826 F. Supp. 3d at 1166. Three factors guide that inquiry:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Each factor favors Petitioner.

First, as discussed above, Petitioner's interest in her freedom is substantial, and her re-detention by ICE extinguished that interest. Her liberty on parole, "although indeterminate, include[d] many of the core values of unqualified liberty." *Morrissey*, 408 U.S. at 482. Petitioner was "free to be with family and friends and to form the other enduring attachments of normal life." *Id.* Her re-detention inflicted on her "the grievous loss" of that freedom. *Id.*; *see Abgarian v. Lyons*, 2026 WL 2833799, at *3 (C.D. Cal. Sept. 21, 2026) (finding the first factor favored noncitizen "given his release and the extensive time he spent out of custody in compliance with its conditions"). The first factor therefore strongly favors Petitioner.

Second, the risk that the government erroneously deprived Petitioner of her liberty interest is exceedingly high. Due process may be "flexible," *Morrissey*, 408 U.S. at 481, but the "general rule" is that "individuals must receive notice and an opportunity to be heard before the government deprives them" of a constitutionally protected interest, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993). Indeed, the Supreme Court has "described 'the root requirement' of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant" protected interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

Under this rubric, "the risk of an erroneous deprivation of liberty is high" where, as here, the noncitizen petitioner "has not received any bond or custody redetermination hearing." *Singh*, 803 F. Supp. 3d at 1047 (cleaned up); *accord Martinez*, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant

without a pre-detention hearing."). The risk runs high because, without process, "neither [p]etitioner nor [r]espondents had an opportunity to determine whether any valid basis exists for [petitioner's] detention." *Oliveros v. Kaiser*, 2025 WL 2677125, at *7 (N.D. Cal. Sept. 18, 2025).

Civil immigration detention is meant to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. It is permissible to prevent flight or danger to the community. *Id.* Yet Respondents afforded Petitioner no procedure by which any neutral arbiter could test whether her confinement serves either purpose. Even now, Respondents do not argue that Petitioner is dangerous or that she would flee. Respondents come closest to a justification in their statement of facts, which recounts—in passing—Petitioner's May 2026 arrest. *See* ECF 7 at 2. But that arrest is an accusation, not a finding. "The mere fact that a man [or woman] has been arrested has very little, if any, probative value in showing that he [or she] has engaged in any misconduct," and "whatever probative force the arrest may have had is normally dissipated" when formal charges are not filed. *Schware v. Bd. of Bar Exam'rs of N.M.*, 353 U.S. 232, 241 (1957). Here, the record does not disclose any factual background about Petitioner's arrest, whether prosecutors filed charges against Petitioner, or whether any criminal case remains pending. In all likelihood, a pre-deprivation hearing would have borne those questions out. Providing Petitioner with prior individualized notice and a pre-deprivation hearing would have meaningful value in ensuring that any renewed detention decision rests on a lawful basis. On this record, the second factor favors Petitioner.

Third, the government has a legitimate interest "in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings." *Hernandez*, 872 F.3d at 990. But the countervailing interest is in detaining Petitioner without first giving her any notice or opportunity to be heard. And that interest is undoubtedly minimal, when measured against the cost and administrability of providing that minimal process. *See Singh*, 803 F. Supp. 3d at 1047–48; *O.T.*, 2026 WL 1382872,

at *4. Custody hearings in immigration court "are routine and impose a minimal cost." *Singh*, 803 F. Supp. 3d at 1048. And "it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1036.

Also notable is the fact that the record is bereft of any evidence or argument suggesting that Petitioner's re-detention demanded haste. ICE officers learned of the Petitioner's arrest at least one day before they arrested her. ECF 7-1 at 3. They then lodged a detainer with the Burbank Police Department, and the following day, they sent officers to wait patiently outside the police station for Petitioner to be released. *Id.* at 3–4. This sequence indicates that Respondents had time. Respondents do not explain why they used none of it to give Petitioner notice, or why, in the four months since, they have not given her any opportunity to be heard, either. Under these circumstances, the third factor favors Petitioner.

Weighing these factors together, the Court concludes that due process entitled Petitioner to individualized notice and a hearing before a neutral decisionmaker prior to immigration officials re-detaining her and depriving her of her constitutionally protected liberty interest. Yet Petitioner received no process at all before ICE officers re-detained her in May 2026. Her detention therefore violates the Due Process Clause of the Fifth Amendment. *Ordonez v. Mullin*, 2026 WL 1630411, at *4 (C.D. Cal. June 3, 202) (finding "that Petitioners' detention—which was accompanied by *no* process—violates the Due Process Clause." (emphasis in original)).

**IV**

Having determined that the government violated Petitioner's due process rights, the Court must determine what remedy fits the violation. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and they are "authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and

justice require." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).

Here, Petitioner seeks immediate release from immigration custody. ECF 1 at Prayer for Relief ¶ C. Respondents assert in a heading that Petitioner "has not shown . . . that the remedy would be immediate release." ECF 7 at 4 (cleaned up). But Respondents offer no other argument underneath that heading to support this bald assertion. *See id.* at 4–5. In any event, the Court finds that release is the remedy that fits the violation. Petitioner's detention has been unlawful from its inception, so the Court returns her to "the last uncontested status which preceded the pending controversy." *Singh*, 803 F. Supp. 3d at 1050 (citation omitted). That means Respondents must release Petitioner and reinstate the same conditions that governed her release before ICE officers unconstitutionally re-detained her on May 19, 2026. *See Ordonez*, 2026 WL 1630411, at *4 (explaining that the remedy is "to order Petitioners placed in the position they would have been absent the due process violation—that is, they should be released from custody on the conditions that were initially imposed"); *O.T.*, 2026 WL 1382872, at *4 (ordering petitioner's immediate release based on re-detention without constitutionally adequate process); *Abgarian*, 2026 WL 2833799, at *4–5 (same).

The Court recognizes that "civil commitment for *any* purpose constitutes a significant deprivation of liberty." *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011) (citation omitted) (emphasis in original), *abrogated in part on other grounds as recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). It must therefore also acknowledge the reality that merely ordering Petitioner's release today would, unfortunately, leave Petitioner exposed to the same unconstitutional treatment tomorrow. To that end, the Court enjoins Respondents from re-detaining Petitioner unless they first provide her (1) at least seven days' written notice describing the changed circumstances said to warrant her arrest or detention, *and* (2) a pre-deprivation hearing before a neutral decisionmaker at which the government shall bear

the burden of proving by clear and convincing evidence (a) that Petitioner is a flight risk or a danger to the community and (b) that no condition or combination of conditions could reasonably assure Petitioner's future appearance or the safety of the community. This relief is necessary to protect Petitioner's protected liberty interest from the risk of repeated, but avoidable, infringement without due process.

Finally, Petitioner asks the Court to bar her transfer outside the Central District of California during the pendency of this case. ECF 1 at ¶¶ 84–85; *id.* at Prayer for Relief ¶ E. Because the Court grants the Petition and orders Petitioner's immediate release, the Court denies as moot Petitioner's request to enjoin her transfer outside of this District.

**V**

Accordingly, IT IS HEREBY ORDERED that:

1) The Petition is GRANTED;

2) Respondents shall immediately release Petitioner Ani Parsadanyan (A# 249-118-426), on the same conditions that were in place before her re-detention on May 19, 2026;

3) Respondents shall return to Petitioner all confiscated documents, identification, and other personal property;

4) Respondents shall file a notice of compliance within 72 hours of this Order;

5) Respondents are enjoined from re-detaining Petitioner unless they first provide her with seven days' written notice describing the changed circumstances said to warrant her arrest or detention, and a pre-deprivation hearing before a neutral decisionmaker at which the government shall bear the burden of proof as described above; and

//

6) The request for an order barring Petitioner's transfer outside the Central District of California is DENIED AS MOOT.

Dated: September 28, 2026

HON. DIANA M. KWOK
UNITED STATES MAGISTRATE JUDGE